

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**08-1700**

| | | |
|---|---|---|
| ATEL MARITIME INVESTORS, LP et. al | * | CASE No: |
| Plaintiff, | * | SECTION " " |
| Versus | * | MAGISTRATE NO: |
| SEA MAR MANAGEMENT, LLC, NABORS WELL SERVICES CO and NABORS INDUSTRIES LTD, | * | **SECT M MAG 4** |
| Defendants | * | |

### COMPLAINT.

NOW INTO COURT, through the undersigned counsel, come plaintiffs ATEL MARITIME INVESTORS, LP, ATEL MARITIME INVESTORS, III LP, and KALA KANE, LLC ("ATEL") which respectfully represent:

### JURISDICTION

**1.**

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332 (a) and 1333 (l). The amount in controversy between the parties exceeds the sum of Seventy five Thousand and no/100 ($75,000) Dollars, exclusive of interest and costs.

Fee $350.
Process____
X Dktd____
___ CtRmDep____
___ Doc. No____

Adams & Reese
*Registered Limited Liability Partnership*
Attorneys and Counselors
At Law
New Orleans, LA

## VENUE

**2.**

This Court is the court of proper venue because the Master Bareboat and Charter Agreement executed by plaintiffs and defendants provide, under Article 16, for exclusive venue in this Court.

## PARTIES

**3.**

Plaintiff ATEL Maritime Investors, LP is a limited partnership organized under the laws of the State of Delaware with its principal place of business in the State of California. Plaintiff ATEL Maritime Investors, III, LP is a limited partnership organized under the laws of the State of Delaware with its principal place of business in the State of California. KALA KANE, LLC is a limited partnership organized under the laws of the State of Delaware with its principal place of business in the State of California. All plaintiffs are hereinafter collectively referred to as "ATEL."

**4.**

Defendant, SEA MAR MANAGEMENT, LLC ("SEA MAR") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of Delaware. ATEL is informed and believes that SEA MAR DIVISION of NABORS WELL SERVICES CO ("WELL SERVICES") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of Texas and is the successor by merger of Pool Company, Texas, LTD. NABORS INDUSTRIES LTD ("NABORS") was incorporated in Bermuda.

## FACTS

**5.**

ATEL is owner of four U.S. flag vessels: CAPE KUMAKAHI (formerly known as Avery Island); CAPE HANAMANOIA (formerly known as Discovery Island); CAPE KALA KANE (formerly known as Sun Island); and CAPE ATLAS (formerly known as Isla de Cedros). These

Adams & Reese
*Registered Limited
Liability Partnership*
*Attorneys and Counselors
At Law*
New Orleans, LA

four vessels ("vessels") constitute the subject matter of the two written Master Bareboat Charter Agreements ("Charter Agreements") between ATEL and SEA MAR dated July 7, 2004.

### 6.

SEA MAR is a Management Company who entered into two Charter Agreements with ATEL on July 4, 2004. The first Charter Agreement included three vessels: Cape Kumakahi, Cape Hanamanoia and Cape Atlas. The second Charter Agreement included one vessel: Cape Kala Kane. The duration of the Charter Agreements were for a term of 36 months. After the initial term expired, the Charter Agreement term was month-to-month, which could be terminated by either party upon the giving of at least thirty (30) days written notice. SEA MAR, under the terms of and conditions of the Charter Agreements, was charged with the contractual duty, among other duties, to

- charter ATEL's vessels;
- operate and maintain ATEL's four vessels;
- collect all revenues for ATEL's account derived from chartering those vessels to companies like Chevron, ENI Petroleum, Remington Oil & Gas Company, ATP Oil & Gas Company, and other companies;
- pay certain expenses, which would later be reimbursed by ATEL upon proof of payment by SEA MAR; and
- provide monthly accounting reports to ATEL so that ATEL could accurately verify the net revenue generated by SEA MAR's chartering of ATEL's vessels under the parties' two Master Bareboat Charter Agreements.

### 7.

NABORS is the parent company of SEA MAR. When SEA MAR entered into Charter Agreements with companies like Remington Oil & Gas Corporation and ATP Oil & Gas Corporation, it did so as a division of NABORS.

**8.**

Unbeknownst to ATEL, SEA MAR surrendered to Nabors Pool Company Texas, Ltd. (which was later merged into WELL SERVICES) and WELL SERVICES, the right to enter into Charter Agreements with companies who hired ATEL vessels.

**9.**

NABORS' WELL SERVICES than entered into time-charter agreements with various oil, gas, exploration and supply companies who chartered the vessels owned by ATEL. When Pool Company Texas Limited and WELL SERVICES entered into charter hire agreements with companies like Chevron, Remington Oil & Gas Corporation, and ATP Oil & Gas Corporation, it did so as a division of NABORS.

**10.**

Under the Charter Agreements, ATEL, as the owner of four vessels, entered into an Agreement with SEA MAR obligating SEA MAR to charter, operate, manage, maintain, oversee, and supervise the time chartering of ATEL's vessels in accordance with the terms and conditions of the Charter Agreements.

**11.**

The contractual duties of SEA MAR, among others, are specified under Article 3, Page 2-8 of the Charter Agreements.

**12.**

Under the Charter Agreements, SEA MAR was also obligated to obtain an insurance policy and deliver it to ATEL upon ATEL's request.

**13.**

Under Article 12 (b) (ii) of the Charter Agreements, SEA MAR was obligated to deliver to ATEL all records relating to the vessels. This was, as were all charter obligations, a continuing obligation that extended beyond the initial 36 month term of SEA MAR's agreement with ATEL.

Adams & Reese
*Registered Limited Liability Partnership*
*Attorneys and Counselors At Law*
New Orleans, LA

**14.**

SEA MAR's, WELL SERVICES', and NABORS' failure to make all payments when due constitutes an event of default.

**15.**

If any dispute relating to or arising out of the Charter Agreements occurs and litigation ensues, the prevailing party shall be entitled to its attorney's fees and costs.

## COUNT I

## BREACH OF CONTRACT

**16.**

ATEL re-alleges and incorporates by reference, as though fully alleged herein, paragraphs 1 through 15 of this complaint.

**17.**

Under the Charter Agreements, SEA MAR was obligated to collect revenues (less certain expenses) and to provide ATEL with monthly accounting reports so that ATEL could accurately determine the net profits derived from the Charter Agreements. For this service, SEA MAR received a management fee, dependant upon the amount of daily revenue generated by each vessel.

**18.**

On or about July 7, 2004, ATEL and SEA MAR entered in two Charter Agreements. ATEL acquired the four vessels identified in the Charter Agreements for purposes of investment. SEA MAR was retained to charter, operate, manage, maintain, collect all revenue (less certain expenses) derived from time chartering the vessels, and to provide ATEL with monthly accounting reports so that ATEL could accurately determine the net profits generated by the time charters. In turn, SEA MAR, by agreement, received a Management Fee, depending on the amount of daily revenue generated by each vessel, and SEA MAR also received reimbursement for any operating expenses it incurred upon its invoicing ATEL with proof of payment.

**19.**

Although Article 8 (b) of the Charter Agreements states that all time charters or contractual relationships with companies who leased the vessels shall be in the name of SEA MAR and shall be the sole property of SEA MAR, Defendants SEA MAR Division of Nabors Well Services Company and SEA MAR Division of Pool Well Services Company signed the Charter Agreements with Remington Oil & Gas Company and ATP Oil & Gas Company, respectively.

**20.**

Under Article 3 (i) of the Charter Agreements, SEA MAR owed ATEL the contractual duty to provide the following services for the account of ATEL:

(i) **Books & Records and Reporting**. SEA MAR shall maintain books and records sufficient to completely and properly account for all income and expenses applicable to the vessels including, without limitation, all the time chartered hires, expenses, and Management Fees. SEA MAR shall provide to ATEL on a monthly basis (hereinafter referred to as "Monthly Reports"), which shall set forth for the preceding calendar month (i) time charter hire and other amounts earned and received; (ii) expenses incurred and paid; (iii) Management Fees earned. The Monthly Reports shall be delivered to ATEL no later than the 15th day of the following month.  SEA MAR shall provide ATEL on the 15th day and last day of each month documentation in support of the wages, payroll taxes, health insurance premiums, employee benefits, supplemental insurance premiums, physicals, drug screens, training and any other expenses related to the crew for the vessels. SEA MAR shall provide ATEL with an accounting of the Management Fee and ATEL Expenses with the Monthly Report required under this Article 3 (i).

Article 3 (i) also contemplates that SEA MAR shall provide ATEL with a proper accounting of all time charter hire-i.e., charter hire revenue and the back-up documentation substantiating the monthly reports, including the actual sub or time charters. (See, e.g., Section 3(b) of the Master Bareboat Charter Agreement.)

### 21.

Under Article 6 (a) of the Charter Agreements, SEA MAR was contractually obligated to give ATEL on a monthly basis on the fifteenth day of each month with respect to each vessel, gross revenues received by SEA MAR from the time of charter of each vessel for each month distributed out of the Lock Box Account. After all expenses incurred by SEA MAR had been deducted as to each charter vessel, including SEA MAR's Management Fees, the amount remaining was to be earmarked for ATEL's account. SEA MAR failed to consistently perform on a monthly basis these contractual duties.

### 22.

Under Article 6 (b) (ii) of the Charter Agreements, SEA MAR was contractually obligated to maintain books and records sufficient to completely and properly account for all income and expenses applicable to the vessels, including, without limitation, all the time charter hire, expenses, and Management Fees. SEA MAR was contractually obligated to maintain books and records sufficient to completely account for all income and expenses applicable to the vessels, but it failed to share this information with ATEL despite being repeatedly asked to do so.

### 23.

Under Article 6 (b) (iii) of the Charter Agreements, SEA MAR was contractually obligated to provide monthly reports to ATEL, which SEA MAR failed to consistently provide on a monthly basis.

### 24.

Under Article 7 of the Charter Agreements, SEA MAR was contractually obligated to issue invoices to companies who entered into time charter agreements with WELLS SERVICES, SEA MAR, or NABORS and invoice the amount due and owing for use of the vessels. Payments of all such invoices were supposed to be made directly to a Lock Box account maintained at Bank One in New Iberia, Louisiana; and SEA MAR and ATEL were supposed to cooperate with each other to facilitate payments out of the Lock Box Account in accordance with the terms of the Charter Agreement. (See, e.g., Article 7 (e) of Charter Agreements.)

**25.**

Under Article 7 (g) of the Charter Agreement, SEA MAR agreed, upon ATEL's request, to send ATEL copies of all invoices submitted for time charters, which included charges for the use of the vessels. SEA MAR further agreed that all invoices submitted by SEA MAR for time charters would clearly identify each vessel covered thereby and would clearly identify the charges allocable to the use of each such vessel. Yet, despite repeated demands by ATEL, SEA MAR has refused to perform this obligation, thereby rendering it liable to ATEL for this breach and any monetary damages owed to ATEL, including reasonable attorney's fees and costs.

**26.**

Under Article 10 (iii) of the Charter Agreements, SEA MAR breached its contractual duty to ATEL by failing to perform the above-described covenants, conditions, and obligations, which were supposed to be performed by SEA MAR under the Charter Agreements.

**27.**

Under Article 12 (b) (ii), SEA MAR was obligated to deliver, but has refused to deliver, all records relating to the four vessels.

**28.**

SEA MAR has been in breach of the contractual obligations specified in paragraphs 19 through 27 of this complaint, in whole or in part, from July 7, 2004 through July 7, 2007. Despite ATEL's patience and three separate demand letters to SEA MAR and NABORS, neither of these Defendants have agreed to perform the contractual obligations owed to ATEL under the Charter Agreements. Accordingly, SEA MAR and NABORS, remain *in solido* liable to ATEL for the specified breaches of the Charter Agreements and ATEL's general and consequential damages plus attorney's fees and costs.

**29.**

ATEL has satisfied all conditions and covenants on its part to be performed or was excused from fulfilling such covenants and conditions because of SEA MAR's, WELLS SERVICES' and NABORS' prior contractual breaches and other wrongful conduct.

Adams & Reese
*Registered Limited Liability Partnership*
Attorneys and Counselors
At Law
New Orleans, LA

### 30.

As a direct and proximate result of SEA MAR's, WELLS SERVICES' and NABORS' breach of their contractual obligations to ATEL by failing to perform the covenants, conditions, and obligations owed to ATEL, ATEL has been damaged in a sum believed to exceed $2.7 million dollars.

WHEREFORE ATEL prays for judgment as set forth below.

## COUNT II

## FOR AN ACCOUNTING

### (Against SEA MAR, WELLS SERVICES, and NABORS)

### 31.

ATEL re-alleges and incorporate herein by reference paragraphs 1 through 30 of the complaint.

### 32.

On or about July 7, 2004, ATEL and SEA MAR entered in two Master Bareboat Charter Agreements.

### 33.

ATEL re-alleges and incorporates herein by reference paragraphs 19 through 28 of the complaint.

### 34.

ATEL has performed all conditions, covenants, and promises on its part that were required to be performed or it was excused from performing because of Defendants' prior breaches and failing to perform as promised.

### 35.

ATEL re-alleges that SEA MAR, other Defendants, or other business entities are in possession of all accounting records generated from the operations of the four charter vessels SEA MAR was hired to operate, manage, supervise, and oversee, including the accounting

Adams & Reese
*Registered Limited
Liability Partnership*
*Attorneys and Counselors
At Law*
New Orleans, LA

records and reports identified in possession of Defendants, which have been referenced in paragraphs 20 through 25 of the complaint.

### 36.

ATEL is informed and believes that SEA MAR, other Defendants, or other business entities are in possession of all accounting records identified and alleged in paragraphs 19 through 28 of the complaint. Unless ATEL is permitted to review and audit the accounting records identified in paragraphs 19 through 28 of this complaint, it cannot ascertain the true amount of profit and losses reported by Defendants derived from their obligation to operate, manage, supervise and collect revenue generated by ATEL's four Vessels. Nor can ATEL assure its investors that it has obtained a complete and accurate accounting from the Defendants who were charged with supplying that information to ATEL.

### 37.

ATEL has repeatedly demanded a full and complete accounting from SEA MAR and other Defendants, and do so again by the filing of this complaint, but SEA MAR and other Defendants have ignored and have refused to accede to ATEL demands for an accounting.

WHEREFORE, ATEL Maritime Investors, LP, ATEL Maritime Investors, III LP and KALA Kane, LLC ("ATEL") pray that after all legal delays and due proceedings had that there be judgment rendered herein against defendants, Sea Mar Management, LLC, Sea Mar Division of Nabors Well Services Co and Nabors Industries Ltd., in solido for any and all sums proven at any hearing or trial on this matter as a result of the breaches of agreements set forth hereinabove, with interest due thereon from date of judicial demand and for all costs of these proceedings plus reasonable attorneys fees.

ATEL further prays for a complete and accurate accounting from the Defendants for the information and documents as set forth in the above complaint.

Respectfully submitted:

ADAMS AND REESE LLP

*/s/ Robin B. Cheatham*

Robin B. Cheatham La. Bar No. 4004
4500 One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA. 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
*Local Counsel for ATEL Maritime Investors LP, ATEL Maritime Investors, III LP and KALA Kane, LLC*

And

Russell F. Brasso
Foreman & Brasso
930 Montgomery Street, Suite 600
San Francisco, CA. 94133
Telephone: (415) 433-3475
Facsimile: (415) 781-8030