UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ATEL MARITIME INVESTORS, LP, ET AL<br>**Plaintiffs** | C.A. 08-1700 |
| | SEC. "I" |
| **VERSUS** | MAG. (4) |
| SEA MAR MANAGEMENT, LLC ET AL<br>**Defendants** | |

## PLAINTIFFS' THIRD AMENDED COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come the Plaintiffs, ATEL Maritime Investors, LP, a Delaware limited partnership, ATEL Maritime Investors III, LP, a Delaware limited partnership, and Kalakane, LLC (formerly Kala Kane, LLC), a Nevada limited liability company, for the purpose of filing their Third Amended Complaint as follows:

### INTRODUCTION

**1.**

On November 6, 2009, the Defendants filed a third party demand adding Van DeWitt as a third party defendant. The trial that was scheduled in the case for January 25, 2010, was continued to September 13, 2009. A scheduling conference was held on January 14, 2010. At that time the court set deadlines for amendments to pleadings for February 12, 2010.

**2.**

Based on evidence developed during the depositions taken of witnesses in August, September and October of 2009, the review of documents provided in discovery, and the third party demand of Van DeWitt filed on November 6, 2009, the Plaintiffs have identified additional causes of action and parties to be added to this dispute as follows.

Adams & Reese
*Registered Limited
Liability Partnership*
*Attorneys and Counselors
At Law*
New Orleans, LA

### 3.

Plaintiffs hereby adopt and incorporate all paragraphs in their Complaint, First Amended Complaint, Second Amended Complaint, RICO Statement, and all other pleadings in this case as if copied herein in extenso.

### 4.

Pursuant to Rule 15 of the Federal Rules of Civil procedure and the Court's Scheduling Order (Doc. #221), Plaintiffs hereby amend the Complaint, First Amended Complaint and Second Amended Complaint to add an additional party and additional paragraphs 96 – 114 as set forth below.

## ADDITIONAL PARTIES

### 96.

Defendant, Sea Mar Investco, LLC ("Investco") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Delaware.

## COUNT VII
## UNFAIR/DECEPTIVE TRADE PRACTICES

### 97.

On July 7, 2004, ATEL Maritime Investors, LP, ATEL Maritime Investors III, LP, and Kalakane, LLC ("ATEL") entered into a master bareboat charter agreement with Sea Mar Management, LLC ("Sea Mar") for profit. ATEL was the owner of the four vessels in that contract. On January 19, 2005, Sea Mar Division of Pool Well Services (which later became Sea Mar Division of Nabors Well Services and which will hereinafter be described as Pool/Nabors) entered into a time charter agreement for profit with Sea Mar for the four ATEL vessels. By entering into this agreement, Pool/Nabors became a competitor of ATEL in the time charter business.

Pool/Nabors engaged in unfair trade and deceptive practices by committing acts of fraud, misrepresentation, concealment, and/or non-disclosure to ATEL, all unbeknownst to ATEL. The acts of fraud, misrepresentation, concealment, and/or non-disclosure were transacted as follows.

**98.**

After the original master bareboat charter agreements were executed between ATEL and Sea Mar on July 7, 2004, the President of Pool/Nabors, who was also a board member of Sea Mar, received a phone call from an officer of Nabors Industries, Ltd. (NI, Ltd.) instructing him that Pool/Nabors was to retain ten percent of the day rate charged by Pool/Nabors to third party time charterers for the four ATEL vessels. The President of Pool/Nabors tried to amend the master bareboat charter agreement to include the ten percent retention, but ATEL never agreed to it.

**99.**

On a later date at a board meeting of Sea Mar, an issue arose as to the ten percent retention scheme. One of the board members of Sea Mar expressed reluctance to go forward with the scheme instructed by the officer of NI, Ltd. Despite the reservations expressed, Pool/Nabors went forward with the fraud scheme which resulted in the systematic conversion of ten percent of the day rate revenues generated via the time charter of the ATEL vessels.

**100.**

The ten percent fraud retention scheme was transacted as follows. Sea Mar would enter into a time charter agreement with Pool/Nabors for a specific ATEL vessel at a specific day rate amount. The agreements were executed by an officer of Pool/Nabors and an officer of Sea Mar. At the same time or shortly thereafter, Pool/Nabors would enter into a short form third party time charter agreement with an oil and gas exploration company for the same vessel at a day rate of approximately ten percent higher than the agreement between Sea Mar and Pool/Nabors. The short form third party time charter agreement would be executed by an officer of Pool/Nabors and a representative of the oil and gas exploration company. All of these contracts were executed through the U.S. Mail or by wire through interstate commerce.

**101.**

Sea Mar would issue an invoice to Pool/Nabors for the specific vessel that was the subject of their contract reflecting the lower day rate. This invoice was sent through the U.S. Mail or by wire through interstate commerce. At the same time, or shortly thereafter,

Adams & Reese
*Registered Limited Liability Partnership*
*Attorneys and Counselors At Law*
New Orleans, LA

Pool/Nabors would issue an invoice to the short form third party time charterer at a day rate that was approximately ten percent higher. The invoice was sent through the U.S. Mail or by wire through interstate commerce.

### 102.

The short form third party time charterer would pay the invoice from Pool/Nabors to a post office box in Dallas, Texas utilized by Pool/Nabors at the ten percent higher day rate for the vessel. Pool/Nabors of Houston, Texas then systematically and in furtherance of the fraud scheme would wire the lower day rate amount to Sea Mar at its lock box account in Baton Rouge, Louisiana. ATEL would receive the lower day rate for the vessel from the Sea Mar account all in violation of the master bareboat charter agreements as signed with Sea Mar which required that "all revenues" arising from the vessels be accounted for and remitted to ATEL. The wrongfully converted revenues from the fraud scheme were kept by Pool/Nabors. The fraud retention scheme was executed through eighteen time charterers.

### 103.

At no time were any representatives of ATEL ever advised of the ten percent retention scheme that was engaged in by the officers, directors and employees from Pool/Nabors. To date, no payment has been made to ATEL of the wrongfully converted revenues generated by the fraud scheme and secreted by Pool/Nabors from ATEL. In fact, the Pool/Nabors Vice President of Finance and Rule 30(b)(6) Corporate Representative, confirmed that ATEL was never told about the ten percent retention.

### 104.

Top management representatives of Pool/Nabors have acknowledged under oath that part of the annual bonus money paid to them for their work for Pool/Nabors was derived from the revenues that were not paid to ATEL from this fraud retention scheme.

Adams & Reese
*Registered Limited
Liability Partnership*
Attorneys and Counselors
At Law
New Orleans, LA

**105.**

Pool/Nabors' own accounting records reveal the total amount of the revenues generated by the continuous fraud scheme that was skimmed off of the payments that were due to ATEL by the conspiracy of the officers, directors and employees of Sea Mar, Pool/Nabors and NI, Ltd. was $3,019,206.00. This chart was drafted by a representative of Pool/Nabors at the request of an officer of Pool/Nabors.

The unfair trade and deceptive practices by acts of fraud, misrepresentation, concealment, and/or non-disclosure engaged in by Pool/Nabors entitles the Plaintiffs to recover their actual damages of $3,019,206.00 and attorneys' fees, penalties, treble damages, pre-judgment interest, and post-judgment interest from these Defendants.

## COUNT VIII
## PIERCING THE CORPORATE VEIL

**106.**

The officers, directors, and employees of Sea Mar engaged in a fraudulent retention scheme over a two and a half year period of time resulting in the conversion of $3,019,206.00 owed to ATEL for the time charter of four vessels owned by ATEL. (See paragraphs 54 – 59 of the Second Amended Complaint for the specific acts of the fraudulent retention scheme.) The fraudulent conduct engaged in by Sea Mar permits the Plaintiffs to pierce the veil of Sea Mar as a limited liability company thereby creating responsibility and liability on the part of Sea Mar Investco as the owner of Sea Mar for all causes of action asserted in all of the Complaints. These causes of action are as follows: breach of contract, fraud, RICO violations, conversion, unjust enrichment, unfair and deceptive trade practices, intentional interference with contract, fraud-aiding and abetting; intentional misrepresentation, concealment and/or non-disclosure, negligence and theft of services. The Plaintiffs are entitled to recover their actual damages of $3,019,206.00, attorneys' fees, contractual interest, pre-judgment interest, post-judgment interest, and punitive damages.

Adams & Reese
*Registered Limited Liability Partnership*
*Attorneys and Counselors At Law*
New Orleans, LA

### COUNT IX
### SINGLE BUSINESS ENTERPRISE

### 107.

NI, Ltd., NWS-Pool/Nabors and Sea Mar engaged in a single business enterprise in the conduct of NI, Ltd., and Pool/Nabors by and through its officers, directors and/or employees. They asserted working control over Sea Mar in causing the bareboat charter agreements referred to herein to be breached. NI, Ltd. and Pool/Nabors by and through its officers, directors and/or employees acted independently in causing the bareboat charter agreements referred to herein to be breached. As a result of the skimming of the profits wrongfully obtained from the bareboat charter agreements referred to herein, NI, Ltd., and Pool/Nabors used the property of Sea Mar as its own. Sea Mar, NWS-Pool/Nabors and NI, Ltd. are part of a corporate structure as reflected in the organizational chart previously attached to Documents 124 and 161 that is indicative of excessive fragmentation of what is in reality a single enterprise into a multitude of separate corporations. NI, Ltd., and Pool/Nabors, as a result of the retention of the skimmed profits wrongfully obtained from the bareboat charter agreements referred to herein, maintained an unclear allocation of profits and losses between themselves and Sea Mar. NI, Ltd. and Pool/Nabors through its officers, directors and/or employees in causing the breach of the bareboat charter agreements asserted unified administrative control of Sea Mar whose business functions are similar and/or supplementary to those of NI, Ltd. and Pool/Nabors. As a consequence of the conduct engaged in by these entities, NI, Ltd. and Pool/Nabors are liable for the breach of the master bareboat charter agreement. The Plaintiffs are entitled to the recovery of their actual damages of $3,019,206.00, attorneys' fees, contractual interest, and pre-judgment and post-judgment interest from NI, Ltd. and Pool/Nabors.

### COUNT X
### INTENTIONAL INTERFERENCE WITH CONTRACT

### 108.

Sea Mar and ATEL by virtue of the bareboat charter agreements maintained legally protected contracts of which NI, Ltd. and Pool/Nabors were aware. By and through its officers, directors and/or employees, NI, Ltd. and/or Pool/Nabors intentionally interfered with the master bareboat charter agreements, and/or intentionally induced and/or caused Sea Mar to breach the

Adams & Reese
*Registered Limited Liability Partnership*
Attorneys and Counselors At Law
New Orleans, LA

master bareboat charge agreements without any justification whatsoever resulting in damages to ATEL. As a consequence of this conduct by these entities, the Plaintiffs are entitled to the recovery of their actual damages of $3,019,206.00, attorneys' fees, contractual interest, and pre-judgment and post-judgment interest.

### COUNT XI
### AIDING AND ABETTING (ACTING IN CONCERT)

### 109.

NI, Ltd.'s, NWS-Pool/Nabors' and Sea Mar's tortious conduct constituted aiding and abetting and/or acting in concert in furtherance of the fraudulent and clandestine scheme to purloin millions of dollars owed to ATEL under the master bareboat charter agreements as previously described in paragraphs 50 – 59 of the Second Amended Complaint. As a consequence of this conduct by these entities, the Plaintiffs are entitled to the recovery of their actual damages of $3,019,206.00, attorneys' fees, contractual interest, and pre-judgment and post-judgment interest.

### COUNT XII
### INTENTIONAL MISREPRESENTATION, CONCEALMENT, AND/OR NON-DISCLOSURE

### 110.

NI, Ltd.'s, NWS-Pool/Nabors' and Sea Mar's conduct as previously described in paragraphs 50 – 59 of the Second Amended Complaint, as well as the prior Complaints and pleadings, constitutes intentional misrepresentation, concealment, and/or non-disclosure which caused damages to ATEL. As a consequence of this conduct by these entities, the Plaintiffs are entitled to the recovery of their actual damages of $3,019,206.00, attorneys' fees, contractual interest, and pre-judgment and post-judgment interest.

Adams & Reese
*Registered Limited Liability Partnership*
*Attorneys and Counselors At Law*
New Orleans, LA

## COUNT XIII
## NEGLIGENCE

### 111.

NI, Ltd.'s, NWS-Pool/Nabors' and Sea Mar's conduct as previously described in paragraph 50 – 59 of the Second Amended Complaint, constitutes negligence, including but not limited to, negligent misrepresentation, concealment, and/or non-disclosure, which caused damages to ATEL. As a consequence of this conduct by these entities, the Plaintiffs are entitled to the recovery of their actual damages of $3,019,206.00, attorneys' fees, pre-judgment and post-judgment interest.

## COUNT XIV
## PUNITIVE DAMAGES

### 112.

NI, Ltd.'s, NWS-Pool/Nabors' and Sea Mar's reprehensible conduct in this case, through their officers, directors, board members, and/or employees, constituted gross negligence, and/or willful, wanton and/or reckless conduct, particularly given the fact that their actions were taken or omitted in order to augment their profits, i.e. stuff their corporate coffers with millions of dollars owed to ATEL. In addition to the recovery of actual damages, attorneys' fees, pre-judgment interest and post-judgment interest, the Plaintiffs are entitled to the recovery of punitive damages.

## COUNT XV
## AMENDMENT TO CONTRACTUAL CLAIM

### 113.

ATEL hereby incorporates and re-avers each and every paragraph of the Complaint, First Amended Complaint, and Second Amended Complaint.

Under Article 1 of the master bareboat charter agreements, Sea Mar agreed to "manage, operate, maintain, oversee and supervise the time chartering, crewing, provisioning, maintenance, storage and repairs of the [ATEL] Vessels."

Under Article 3(b) of the master bareboat charter agreements, Sea Mar was obligated to and "responsible for the solicitation, bidding and negotiation of time charters." Further, "[a]ny

Adams & Reese
*Registered Limited Liability Partnership*
Attorneys and Counselors At Law
New Orleans, LA

8

time charter shall be in compliance with all terms of and conditions of the charter ..." When a vessel was time chartered, Sea Mar was obligated to "collaterally assign to ATEL ... a security interest in the time charters", and "the time charter shall be provided to ATEL at the time of collateral assignment."

Article 8(a) of the master bareboat charter agreements, entitled "Collection of Revenues" specifically states: "Sea Mar will be responsible for and agrees to collect all time charter and other revenues earned from the operation of the vessels which revenues shall be directed to the lock box referenced in Article 7 hereof and distributed in accordance with Article 6 hereof.

Under Article 8(d) of the master bareboat charter agreements, entitled "Security Interest", Sea Mar, in pertinent part agreed that "[a]ll accounts receivable arising from the chartering of the Vessels shall be remitted to Sea Mar ... and shall [be deposited] into the lock box account within three (3) days of receipt, as provided in Section 7(f) of this Charter, provided, however, Sea Mar hereby grants ATEL a security inertest in (1) such time charter accounts receivable, (2) the time charter contract rights, and (3) the lock box ...."

Under Article 15 of the master bareboat charter agreements, entitled "Assignment," Sea Mar and ATEL agreed that "this Charter is personal in nature and may not be sold, pledged or otherwise transferred by either party without ... the prior written consent of the other party."

In addition to the breaches of contract set forth in ATEL's prior Complaints and pleadings, NI, Ltd.'s, NWS-Pool/Nabors, and Sea Mar's conduct breached, in bad faith, the above-referred contractual provisions agreed upon in the master bareboat charter agreements.

As result of the Defendants' conduct and/or breaches of contract set forth herein, as well as in prior Complaints and pleadings, ATEL is entitled to recover all damages, foreseeable or not, caused by the failure to perform the contractual obligations contained in the master bareboat charter agreements, as well as contractual late interest pursuant to Article 17 of the master bareboat charter agreements and attorneys' fees, costs, and expenses pursuant to Article 19 of the master bareboat charter agreements.

Adams & Reese
*Registered Limited Liability Partnership*
Attorneys and Counselors At Law
New Orleans, LA

## COUNT XVI
## THEFT OF SERVICES

### 114.

On July 7, 2004 ATEL entered into a master bareboat charter agreement with Sea Mar whereby Sea Mar was to provide the services to manage, operate, maintain, oversee and supervise the time chartering of four ATEL vessels. Under the master bareboat charter agreement all revenues of any kind arising from the time charter services of the vessels were to be paid to ATEL. Pool/Nabors entered into a time charter agreement with Sea Mar to time charter the four ATEL vessels. Unbeknownst to ATEL, Sea Mar, Pool/Nabors and NI, Ltd. engaged in a fraud, misrepresentation, concealment, and non-disclosure scheme in the time charter of the ATEL vessels to keep ten percent of the revenues generated from the time charter of the ATEL vessels from ATEL. The acts of fraud, misrepresentation, concealment and non-disclosure have been previously described in detail in paragraphs 50 through 59 of the Second Amended Complaint. The acts of misrepresentation, fraud, concealment and non-disclosure engaged in by Sea Mar, Pool/Nabors, and NI, Ltd. resulted in the theft of $3,019,206.00 from ATEL. The conduct of Sea Mar, Pool/Nabors, and NI, Ltd. are a theft of services from ATEL. As a consequence of this conduct, the Plaintiffs are entitled to a recovery of their actual damages of $3,019,206.00, attorneys' fees, and pre-judgment and post-judgment interest.

WHEREFORE, ATEL Maritime Investors, LP, ATEL Maritime Investors III, LP and Kalakane, LLC pray that after all legal delays and due proceedings had, that there be judgment rendered herein against Sea Mar Management, LLC, Nabors Well Services Company, and Nabors Industries, Ltd., and Sea Mar Investco, in solido for any and all sums proven at any hearing or trial on this matter as a result of the breach of contract, fraud, RICO violations, conversion, unjust enrichment, unfair and deceptive trade practices, intentional interference with contract, aiding and abetting (acting in concert), intentional misrepresentation, concealment, and/or non-disclosure, negligence, and theft of services, committed as set forth hereinabove, as well as treble damages, actual damages, punitive damages, attorneys' fees, expert fees, expenses, contractual interest, pre-judgment and post-judgment interest in the maximum amounts allowed under the applicable laws and for all costs of these proceedings and for any and all other equitable relief available to the Plaintiffs.

Adams & Reese
*Registered Limited Liability Partnership*
Attorneys and Counselors At Law
New Orleans, LA

ATEL further prays for a complete and accurate accounting from the Defendants for the information and documents as set forth in the Complaints.

Respectfully submitted,

**ADAMS AND REESE LLP**

/s/ Richard B. Eason II
**Robin B. Cheatham (#4004)**
**Richard B. Eason (#5248)**
**E. Gregg Barrios (#20096)**
**Robert L. Bonnaffons (#18564)**
**4500 One Shell Square**
**701 Poydras Street, Suite 4500**
**New Orleans, LA  70139**
**Telephone: (504) 581-3234**
**Fax:  (504) 566-0210**
**Attorneys for ATEL Maritime Investors, LP,**
**ATEL Maritime Investors III, LP, and**
**Kalakane, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the parties and counsel who are filing users, and that service was accomplished on any counsel who is not a filing user by United States Mail on the 12th day of February, 2010.

/s/ Richard B. Eason II

Adams & Reese
*Registered Limited Liability Partnership*
*Attorneys and Counselors At Law*
New Orleans, LA