UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ATEL MARITIME INVESTORS, LP, et al.** | **CIVIL ACTION** |
| **VERSUS** | **No. 08-1700** |
| **SEA MAR MANAGEMENT, L.L.C., et al.** | **SECTION I/4** |

### ORDER AND REASONS

Before the Court are motions for summary judgment filed by defendants, Nabor's Industries, Ltd. ("NIL")[1] and Nabors Well Services Company ("NWS") (collectively referred to herein as "movants").[2] Plaintiffs, Atel Maritime Investors, LP, et al. ("Atel"), oppose the motions.[3] For the following reasons, the motions are **GRANTED IN PART** and **DENIED IN PART**.

### *BACKGROUND*

On July 4, 2004, Atel entered into two Master Bareboat Charter Agreements ("MBCA") with defendant, Sea Mar Management, L.L.C. ("Sea Mar").[4] Under the MBCA, Atel granted Sea Mar a demise charter[5] for four Atel vessels ("the Atel vessels") for a period of three years.[6] The MBCA obligated Sea Mar to "use its commercially reasonable efforts to obtain time

---

[1] R. Doc. No. 158. NIL's motion also requests dismissal for lack of personal jurisdiction. The Court denied that portion of the motion on December 23, 2009. R. Doc. No. 207. At the Court's request, the parties submitted additional briefing with respect to whether a party could be held liable for fraud despite not having any communication with the party who was allegedly defrauded. See R. Doc. Nos. 211, 213, 227, and 228.
[2] R. Doc. No. 154.
[3] R. Doc. No. 161.
[4] R. Doc. No. 1. Atel and Sea Mar agreed to two charter agreements covering four vessels. The terms of the two charter agreements are identical with the exception of the vessel names and the Atel entity involved. See R. Doc. No. 161-4. Because the material terms are identical, the Court will treat them as one agreement for the purposes of deciding these motions.
[5] A demise charter is "a charter under which the shipowner surrenders possession and control of the vessel to the charterer, who then succeeds to many of the shipowner's rights and obligations." Black's Law Dictionary 250 (8th ed. 2008).
[6] R. Doc. No. 161-4, pp. 1-2.

charters[7] for the [v]essels and to keep the [v]essels under time charter throughout the term of this Charter."[8]

To understand Atel's allegations in this case, it is important to examine the defendants' corporate structure. Defendant, NIL, is a holding company.[9] At the time of the contract at issue,[10] it held interests in both Sea Mar and NWS.[11] NWS was a wholly owned subsidiary of NIL. NIL held a 25% interest in Sea Mar.[12] Additionally, the President of NWS, Van De Witt, was a member of the board of directors of Sea Mar.[13] Atel alleges that the relationship between these companies provided the motive for the alleged fraud. According to Atel, over the course of the MBCA, Sea Mar, NIL, and NWS breached the terms of the MBCA[14] and engaged in a fraud to steal a portion of the revenues generated from time chartering the Atel vessels.[15]

Under the MBCA, in exchange for Sea Mar's commercially reasonable efforts to obtain time charters, Atel promised to pay Sea Mar a management fee of $300.00 per day per vessel plus an incentive fee of 5% of the gross daily revenues in excess of $5000.00 per day per vessel.[16] Atel alleges that rather than have Sea Mar charter the vessels directly, NWS would locate the potential charterers. Once a customer was found, Sea Mar would first charter the vessel to NWS. In turn, NWS would subcharter the Atel vessels to the end user at a higher rate. Because Sea Mar paid Atel the revenue earned as a result of the initial charter between Sea Mar and NWS, Atel contends that this arrangement meant that Atel received less revenue than if Sea

---

[7] A time charter is "[a] charter under which the shipowner continues to manage and control the vessel, but the charterer designates the ports of call and the cargo carried." Black's Law Dictionary 250-251 (8th ed. 2008).
[8] R. Doc. No. 161-4, p. 3.
[9] R. Doc. No. 161-6, p. 16.
[10] NIL sold its interest in Sea Mar to an unrelated entity, Hornbeck Offshore, in August, 2007. R. Doc. No. 161-9, p. 28.
[11] R. Doc. No. 161-6, p. 16.
[12] R. Doc. No. 161-9, p. 21.
[13] R. Doc. No. 161-6, p. 17.
[14] R. Doc. No. 1, paras. 6-9.
[15] R. Doc. No. 102.
[16] R. Doc. No. 161-4, p. 12.

2

Mar had chartered the vessels directly to the end-users.[17] It is important to note that Atel does not dispute that it gave its consent to the rates paid by NWS to Sea Mar. Atel alleges, however, that they were not aware that NWS was subchartering the vessels at a higher rate.[18]

Movants contend that summary judgment is appropriate because Atel cannot prevail on its breach of contract claims as neither of the movants were a party to the MBCA. Movants argue that the fraud claims must be dismissed because movants did not make any misrepresentations to Atel.

### *STANDARD OF LAW*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof. Schaefer v. Gulf Coast Regional Blood Center, 10 F.3d 327, 330 (5th

---

[17] R. Doc. No. 102, para. 42.
[18] R. Doc. No. 102, paras. 42-45.

3

Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see also Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

## *DISCUSSION*

### I. Contract and Accounting Claims

Movants argue that the breach of contract claims and accounting claims against them should be dismissed because they were not a party to any contract with Atel. In its opposition, Atel does not contest that argument and offers no evidence or allegations in support of its breach of contract and accounting claims. Under Louisiana law, four elements are necessary for the formation of a valid contract: "(1) the parties must have the capacity to contract; (2) the parties must freely give their mutual consent to the contract; (3) the parties must have a cause or reason for obligating themselves; and (4) the contract must have a lawful purpose." Ingraffia v. NME Hospitals, Inc., 943 F.2d 561, 565 (5th Cir. 1991). Atel has presented no evidence and made no allegations that either of the movants gave their consent to a contract with Atel. Accordingly, Atel's breach of contract and accounting claims against movants are **DISMISSED WITH PREJUDICE**.

**II.    Fraud Claims**

    A.  Choice of Law

Movants contend that Louisiana law should apply to plaintiffs' fraud claims.[19] Movants, relying on Coats v. Penrod Drilling Corp., 5 F.3d 877 (5th Cir. 1993), assert that admiralty courts apply the "greatest interest" test to determine which forum's laws should apply when more than one forum has an interest in the litigation.[20] All of the cases cited by movants, however, apply the "greatest interest" test to determine which nation-state's laws apply and such test does not provide a framework for choosing among the laws of the various jurisdictions within the United States. See Coats, 5 F.3d at 887 (choosing between the law of the United States and the law of the United Arab Emirates); Lauritzen v. Larsen, 345 U.S. 571, 582 (1953) (choosing among the law of the United States, Cuba, and Denmark); Sigalas v. Lido Maritime, Inc., 776 F.2d 1512, 1518 (11th Cir. 1985) (choosing to apply Greek law rather than American law).

Movants ignore the clearly established precedent that, in this circuit, "[i]t is well-settled that the invocation of federal admiralty jurisdiction results in the application of federal admiralty law rather than state law." Louisiana v. M/V Testbank, 752 F.2d 1019, 1031-32 (5th Cir. 1985). "While our maritime decisions are informed by common law developments in the state courts, there is no requirement, as in diversity cases, that state law be adopted." Id. Accordingly, federal courts sitting in admiralty apply common law fraud principles. Black Gold Marine, Inc. v. Jackson Marine Company, Inc., 759 F.2d 466, 470 (5th Cir. 1985). Because no party disputes

---

[19] R. Doc. No. 213, pp. 2-3.
[20] R. Doc. No. 213, p. 2.

that plaintiffs' fraud claims are subject to this Court's admiralty jurisdiction,[21] the Court will apply common-law fraud principles to plaintiffs' claims.[22]

B. Common-Law Fraud

To prevail on a fraud claim, a party must prove that:

> (1) the deceiving party made a material misrepresentation or nondisclosure, (2) the representation was false or the nondisclosure implied that the facts were different from what the deceived party understood them to be, (3) the deceiving party knew that the representation was false or that the nondisclosure implied the existence of false facts, (4) the deceiving party intended the deceived party to rely on the misrepresentation or nondisclosure, and (5) the deceived party detrimentally relied upon the misrepresentation or nondisclosure.

Black Gold Marine, Inc., 759 F.2d at 470.

Movants argue that they cannot be held liable for fraud because movants never made a misrepresentation to—or had any other communication with—Atel. However, NIL, which allegedly directed and benefited from the fraud scheme, and NWS, which allegedly played an integral role in such scheme, cannot escape liability simply because they did not contact Atel directly. See Blachly v. United States, 380 F.2d 665, 673-74 (5th Cir. 1967)("[A] scheme may be fraudulent even though no affirmative representation of fact be made. The deceitful concealment of material facts may also constitute actual fraud.")(internal citations omitted); United States v. Colton, 231 F.3d 890, 898-99 (4th Cir. 2000)("At common law, fraud has not been limited to those situations where there is an affirmative misrepresentation or the violation of some independently-prescribed legal duty . . . common-law fraud includes acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to prevent the other party from

---

[21] See R. Doc. No. 213, p. 2 (defendants); R. Doc. No. 227, p. 6 (plaintiffs).
[22] Because of this Court's opinion with respect to the inapplicability of Louisiana law, the Court does not reach plaintiffs' arguments that, even under Louisiana law, movants' motion should still be denied.

6

acquiring material information.")(internal citations and quotations omitted)(citing <u>Stewart v. Wyoming Cattle Ranche Co.</u>, 128 U.S. 383, 388 (1888)).

Atel alleges that NIL orchestrated a scheme wherein Sea Mar failed to disclose the fact that NWS was subchartering the Atel vessels at a higher rate than NWS was paying to Sea Mar. As noted above, Atel presented evidence that the CEO of NIL instructed NWS president Van DeWitt to implement the alleged scheme and withhold a portion of the revenues resulting from the chartering of the Atel vessels.[23] DeWitt testified that even after Atel requested an accounting, NIL's attorneys told him not to disclose the difference in rates.[24] Additionally, Sea Mar's Vice President of Operations Darrel Plaisance, the man who negotiated Sea Mar's contract with Atel, specifically objected to NWS keeping any revenue resulting from the Atel vessels.[25] Despite communicating with NWS representatives "in excess of a hundred times" with respect to the day rates charged for the Atel vessels, no NWS representative ever informed him that NWS was charging a markup on the Atel vessels.[26] Plaisance testified that it appeared to him that NWS employees were "actively underreporting" the actual day rates being charged by NWS.[27]

Atel has identified a genuine issue of material fact with respect to the fraud claims. One may conclude that movants' actions, allegedly designed to conceal from Atel the true day rates being charged for use of the vessels, constitute a material nondisclosure. Such nondisclosure would imply that the facts were different than Atel perceived them to be. Further, a jury could find that movants knew that their nondisclosure implied the existence of false facts and that they intended that Atel rely on such nondisclosures. Atel argues that it assumed that the day rates

---

[23] R. Doc. No. 161-11, pp. 100-101.
[24] R. Doc. No. 151-11, p. 137.
[25] R. Doc. No. 161-6, pp. 103-04.
[26] R. Doc. No. 161-6, p. 104.
[27] R. Doc. No. 161-6, pp. 104-05.

7

charged to NWS were market rates. NWS's ability to immediately subcharter the boats at a higher rate would imply that Sea Mar was not, in fact, charging NWS a market rate.

Atel has raised a genuine issue of material fact as to whether the defendants were engaged in a markup scheme to skim revenue from the Atel vessels and whether defendants acted to conceal such scheme from Atel. As such, summary judgment is inappropriate.

## *CONCLUSION*

For the reasons stated above,

**IT IS ORDERED** that movants' motions for summary judgment are **GRANTED IN PART** and **DENIED IN PART.** Atel's breach of contract and account claims against movants are **DISMISSED WITH PREJUDICE**. The motions for summary judgment with respect to Atel's fraud claims are **DENIED**.

New Orleans, Louisiana, May 13, 2010.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**