UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ATEL MARITIME INVESTORS, LP, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **No. 08-1700** |
| **SEA MAR MANAGEMENT, L.L.C., ET AL.** | **SECTION I/4** |

## ORDER AND REASONS

Before the Court is a motion, filed by defendant, Van DeWitt ("DeWitt"), to stay litigation and compel arbitration or, alternatively, a motion to sever the third party complaint.[1] Defendants, Sea Mar Management, L.L.C. ("Sea Mar") and Nabors Well Services Co. ("NWS"), and plaintiffs, Atel Maritime Investors, et al. ("Atel"), oppose the motion. For the following reasons, the motion is **GRANTED**.

### *BACKGROUND*

On July 4, 2004, Atel entered into two Master Bareboat Charter Agreements ("MBCA") with defendant, Sea Mar.[2] Under the MBCA, Atel granted Sea Mar a demise charter[3] for four Atel vessels ("the Atel vessels") for a period of three years.[4] The MBCA obligated Sea Mar to

---

[1] R. Doc. No. 202.
[2] R. Doc. No. 1. Atel and Sea Mar agreed to two charter agreements covering four vessels. The terms of the two charter agreements are identical with the exception of the vessel names and the Atel entity involved. See R. Doc. No. 161-4. Because the material terms are identical, the Court will treat them as one agreement for the purposes of deciding these motions.
[3] A demise charter is "a charter under which the shipowner surrenders possession and control of the vessel to the charterer, who then succeeds to many of the shipowner's rights and obligations." Black's Law Dictionary 250 (8th ed. 2008).
[4] R. Doc. No. 161-4, pp. 1-2.

1

"use its commercially reasonable efforts to obtain time charters[5] for the [v]essels and to keep the [v]essels under time charter throughout the term of this Charter."[6]

To understand Atel's allegations in this case, it is important to examine the defendants' corporate structure. Defendant, Nabors Industries, Ltd. ("NIL"), is a holding company.[7] At the time of the contract at issue,[8] it held interests in both Sea Mar and NWS.[9] NWS was a wholly owned subsidiary of NIL. NIL held a 25% interest in Sea Mar.[10] Additionally, the President of NWS, DeWitt, was a member of the board of directors of Sea Mar.[11] Atel alleges that the relationships between these companies provided the motive for the alleged fraud.

Atel alleges that, over the course of the MBCA, Sea Mar, NIL, and NWS breached the terms of the MBCA[12] and engaged in a fraud to steal a portion of the revenues generated from time chartering the Atel vessels.[13] Under the MBCA, in exchange for Sea Mar's commercially reasonable efforts to obtain time charters, Atel promised to pay Sea Mar a management fee of $300.00 per day per vessel plus an incentive fee of 5% of the gross daily revenues in excess of $5000.00 per day per vessel.[14] Atel alleges that rather than have Sea Mar charter the vessels directly, NWS would locate the potential charterers. Once a customer was found, Sea Mar would first charter the vessel to NWS. In turn, NWS would subcharter the Atel vessels to the end user at a higher rate. Because Sea Mar paid Atel the revenue earned as a result of the initial charter between Sea Mar and NWS, Atel contends that this arrangement meant that Atel received

---

[5] A time charter is "[a] charter under which the shipowner continues to manage and control the vessel, but the charterer designates the ports of call and the cargo carried." Black's Law Dictionary 250-251 (8th ed. 2008).
[6] R. Doc. No. 161-4, p. 3.
[7] R. Doc. No. 161-6, p. 16.
[8] NIL sold its interest in Sea Mar to an unrelated entity, Hornbeck Offshore, in August, 2007. R. Doc. No. 161-9, p. 28.
[9] R. Doc. No. 161-6, p. 16.
[10] R. Doc. No. 161-9, p. 21.
[11] R. Doc. No. 161-6, p. 17.
[12] R. Doc. No. 1, paras. 6-9.
[13] R. Doc. No. 102.
[14] R. Doc. No. 161-4, p. 12.

2

less revenue than if Sea Mar had chartered the vessels directly to the end-users.[15] It is important to note that Atel does not dispute that it gave its consent to the rates paid by NWS to Sea Mar. Atel alleges, however, that they were not aware that NWS was subchartering the vessels at a higher rate.[16]

On November 6, 2009, NIL, Sea Mar, and NWS ("third party plaintiffs") filed a third party complaint against DeWitt alleging that third party plaintiffs instructed DeWitt to either negotiate an amendment to the MBCA that would expressly authorize NWS to sub-charter the Atel vessels at higher rates, or to terminate the MBCA.[17] Third party plaintiffs contend that DeWitt ignored this instruction and, accordingly, is liable to third party plaintiffs for any liability owed by them to Atel. Although the third party complaint asserts that Atel should recover directly from DeWitt, the third party complaint does not allege that DeWitt breached any contractual relationship with Atel nor made any fraudulent representations.[18]

DeWitt seeks an order staying litigation of the third party complaint and compelling DeWitt and the third party plaintiffs to submit their dispute to binding arbitration. DeWitt does not seek a stay of the underlying dispute between third party plaintiffs and Atel.[19] DeWitt contends that his employment agreement with third party plaintiffs mandates arbitration for any dispute "related to or arising out of a current, former or potential employment relationship."[20] By its terms, the arbitration provision of the employment agreement applies to "all legal and

---

[15] R. Doc. No. 102, para. 42.
[16] R. Doc. No. 102, paras. 42-45.
[17] R. Doc. No. 147.
[18] See. R. Doc. No. 147.
[19] *See* R. Doc. No. 234, p. 3. Additionally, DeWitt does not seek a stay of Atel's direct claims against DeWitt pursuant to third party plaintiffs' 14(c) tender. R. Doc. No. 234, p. 2, n.1.
[20] R. Doc. No. 202-2, p. 1.

3

equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Program."[21]

*LAW AND ANALYSIS*

The Federal Arbitration Act ("the FAA") mandates the United States District Courts to stay litigation in any case raising a dispute referable to arbitration. 9 U.S.C. § 3(2009). The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on the application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .

*Id.*

Because arbitration is a matter of contract between parties, a court cannot direct or compel arbitration without finding that the parties have expressly agreed to arbitrate the dispute in question. *Personal Security & Safety Systems, Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002). "To ascertain whether the parties have agreed to arbitrate a particular claim, we must determine: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (internal citations and quotations omitted). Doubts concerning the scope of coverage of an arbitration clause are to be resolved in favor of arbitration. *Id.*

It is clear that the third party complaint against DeWitt is subject to arbitration. No party challenges the existence of a valid agreement to arbitrate between DeWitt and the third party plaintiffs. The question becomes, therefore, whether the dispute falls within the scope of that agreement. As noted above, the employment agreement mandates arbitration for all disputes

---

[21] R. Doc. No. 202-2, p. 1.

"related to or arising out of a current, former or potential employment relationship."[22] The third party plaintiffs' allege that DeWitt is liable for any damages they pay to Atel because DeWitt breached his duties while acting as their employee. Such an allegation is "related to or aris[es] out of" DeWitt's employment relationship with third party plaintiffs. Accordingly, the Court is persuaded that DeWitt and third party plaintiffs have agreed to arbitrate the dispute alleged in the third party complaint.

Atel contends that they would be unduly prejudiced by a stay of the third party complaint because the third party complaint tenders DeWitt as a defendant to Atel. The Court is not persuaded that a stay of the third party plaintiffs' claims against DeWitt would unduly prejudice Atel because DeWitt does not seek a stay of Atel's direct claims against third party plaintiffs or against DeWitt. As a result, the relief requested by DeWitt would not impact Atel's ability to recover against any defendant.

Third party plaintiffs argue that if the Court finds that the third party complaint should be stayed pending arbitration, the entire matter should be stayed because it is so intertwined that the third party complaint cannot be separated from Atel's claims. The Court is unpersuaded by this argument.

Admittedly, DeWitt's ultimate liability, if any, is intertwined with Atel's claims against all defendants. However, third party plaintiffs' claims against DeWitt address whether DeWitt breached his duties as an employee to third party plaintiffs—an issue which does not involve Atel. To the extent that the determination of such issues will involve duplication of effort or the risk of inconsistent findings, such risks "are the risks that parties to an arbitration clause must be considered to have contemplated at the time they struck their bargain." *Tai Ping Insurance Co., Ltd v. M/V Warshau*, 731 F.2d 1141, 1145 (5th Cir. 1984).

---

[22] R. Doc. No. 202-2, p. 1.

*CONCLUSION*

For the reasons stated above,

**IT IS ORDERED** that DeWitt's motion to stay third party plaintiffs' claims against DeWitt and to compel arbitration is **GRANTED**.[23]

New Orleans, Louisiana, May 24, 2010.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[23] Because of this Court's opinion with respect to the motion to stay, the Court does not reach the parties' arguments concerning whether the third party complaint should be severed.