# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ATEL MARITIME INVESTORS, LP, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-1700** |
| **SEA MAR MANAGEMENT, L.L.C., NABORS WELL SERVICES, CO., and NABORS INDUSTRIES, LTD.** | **SECTION: "G"(4)** |

## ORDER AND REASONS

Before the Court is Defendants Nabors Industries, Ltd., Nabors Well Services Company and Sea Mar Management, L.L.C.'s (collectively, "Defendants") Motion for Summary Judgment,[1] in which Defendants seek summary judgment in their favor on Plaintiff Atel Maritime Investors, LP, et al.'s ("Atel") claims for violations of the Louisiana Unfair Trade Practices and Consumer Protection Act[2] ("LUTPA"), because the claims are time-barred under the statute's peremptive period. Defendants further seek summary judgment on Atel's claims brought under the Racketeering Influenced and Corrupt Organizations Act[3] ("RICO") on the basis that: 1) Atel cannot establish a pattern of racketeering activity or a RICO enterprise, necessary elements for any RICO claim under 28 U.S.C. § 1962; and 2) Atel cannot establish specific elements necessary to support claims under each subsection of Section 1962. Having considered the motion, the response, the reply, the record, and the applicable law, for the following reasons, the Court will grant the motion.

---

[1] Rec. Doc. 518.

[2] La. R.S. § 51:1401, *et seq.*

[3] 18 U.S.C. § 1961, *et seq.*

## I. Background

On July 7, 2004, Atel entered into two Master Bareboat Charter Agreements ("MBCA") with Defendant, Sea Mar Management, L.L.C. ("Sea Mar").[4] Under the MBCA, Atel granted Sea Mar a demise charter[5] for four Atel vessels (the "Atel vessels") for a period of three years.[6] The MBCA obligated Sea Mar to "use its commercially reasonable efforts to obtain time charters for the [v]essels and to keep the [v]essels under time charter throughout the term of this Charter."[7]

To understand Atel's allegations in this case, it is important to examine Defendants' corporate structure. Defendant, Nabors Industries, Ltd. ("NIL") is a holding company.[8] At the time of the contract at issue, NIL held interests in both Sea Mar and Defendant Nabors Well Services Company ("NWS").[9] NWS was a wholly owned subsidiary of NIL, and NIL held a 25% interest in Sea Mar.[10] Additionally, the President of NWS, Van DeWitt, was a member of the board of directors of Sea Mar.[11] Atel alleges that the relationship between these companies provided the

---

[4] Rec. Doc. 1. Atel and Sea Mar entered into two charter agreements covering four vessels. The terms of the charter agreements are identical with the exception of the vessel names and the Atel entity involved. *See* Rec. Doc. 161-4. Because the material terms are identical, the Court will treat the agreements as one agreement for the purposes of deciding this motion.

[5] A demise charter is "a charter under which the shipowner surrenders possession and control of the vessel to the charterer, who then succeeds to many of the shipowner's rights and obligations." *Black's Law Dictionary* 250 (8th ed. 2008).

[6] Rec. Doc. 161-4 at pp. 1-2.

[7] Rec. Doc. 161-4 at p. 3. A time charter is "[a] charter under which the shipowner continues to manage and control the vessel, but the charterer designates the ports of call and the cargo carried." *Black's Law Dictionary* 250-251 (8th ed. 2008).

[8] *Id*. at p. 16.

[9] *Id*.

[10] Rec. Doc. 161-9 at p. 21.

[11] Rec. Doc. 161-6 at p. 17.

motive for the alleged misconduct. According to Atel, over the course of the MBCA, Sea Mar, NIL, and NWS engaged in fraud to steal a portion of the revenues generated from time chartering the Atel vessels.[12] Atel brought claims under LUPTA[13] and RICO,[14] in addition to other causes of action not relevant to the pending motion, based on this allegedly fraudulent conduct.

Under the MBCA, in exchange for Sea Mar's commercially reasonable efforts to obtain time charters, Atel promised to pay Sea Mar a management fee of $300 per day per vessel plus an incentive fee of 5% of the gross daily revenues in excess of $5000 per day per vessel.[15] However, Sea Mar did not charter the vessels directly; instead, it entered into a Master Time Charter Agreement ("MTCA") with NWS on January 19, 2005.[16] Under this agreement, NWS would locate potential charterers, and once a customer was found, Sea Mar would charter the vessel to NWS, and in turn, NWS would subcharter the Atel vessels to the end user at a higher rate.[17] Because Sea Mar paid Atel the revenue earned as a result of the initial charter between Sea Mar and NWS, Atel contends that this arrangement resulted in Atel receiving less revenue than if Sea Mar had chartered the vessels directly to the end-users.[18]

As a result of these events, on April 21, 2008, Atel filed the pending lawsuit.[19] This case has

---

[12] Rec. Doc. 102.

[13] Rec. Doc. 259.

[14] Rec. Doc. 210.

[15] Rec. Doc. 161-4 at p. 12.

[16] Rec. Doc. 518-3 at p. 2.

[17] *Id.* at pp. 2-3.

[18] Rec. Doc. 102 at ¶ 42.

[19] Rec. Doc. 1.

a lengthy and complicated procedural history, which this Court finds no need to recount in detail. This case was originally assigned to Section "I" of the Eastern District of Louisiana; it was reassigned to this Section, Section "G", on October 7, 2011.[20]

On June 2, 2012, Defendants filed a Motion for Summary Judgment, seeking summary judgment in their favor on Atel's LUTPA and RICO claims.[21] However, that motion was filed after a deadline set forth by this Court. Accordingly, on June 4, 2012, Defendants sought leave to file the motion,[22] which this Court granted,[23] such that the pending Motion for Summary Judgment was filed into the record on June 5, 2012.[24] However, prior to this Court's granting of leave, Atel had previously filed its response in opposition to the June 2, 2012 Motion for Summary Judgment.[25] Atel did not re-submit its opposition, and the Court considers Atel's June 5, 2012 response as the opposition to Defendants' June 5, 2012 motion. After receiving this Court's leave, Defendants filed a reply on June 12, 2012.[26]

## II. Law and Analysis

### A. Standard of Review

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials

---

[20] Rec. Doc. 455.

[21] Rec. Doc. 518.

[22] Rec. Doc. 515.

[23] Rec. Doc. 517.

[24] Rec. Doc. 518.

[25] Rec. Doc. 516.

[26] Rec. Doc. 541.

on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[27]  When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[28]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[29]  If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[30]

As here, if the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden merely by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[31]  At that time, the burden shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[32]  The nonmoving party may not rest upon the pleadings, but must identify specific facts that establish a genuine issue

---

[27] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[28] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[29] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[30] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[31] *See Celotex*, 477 U.S. at 325.

[32] *See id.* at 324.

for trial.[33]

## B. Louisiana Unfair Trade Practices and Consumer Protection Act

### 1. Applicable Law

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[34] "[A] practice is considered unfair, in the context of unfair trade practice law, when it offends public policy, and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers or business competitors."[35] This determination that conduct constitutes unfair practice is a fact-sensitive decision to be made on a case-by-case basis.[36]

Under the statute, any person who suffers a loss "as a result of the use or employment by another person of an unfair or deceptive method, act, or practice" may bring an action to recover damages.[37] Additionally, treble damages may be available for violations that continue after the Louisiana Attorney General provides notice to a party to cease or desist its LUTPA violations.[38] However, claims for violations must be brought within one year "from the time of the transaction

---

[33] *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

[34] La. R.S. § 51:1405(A).

[35] *Donald v. ACM Gaming Co.*, 921 So.2d 196, 202 (La. App. 3 Cir. 2005); *see also Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000) (citation omitted).

[36] *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994); *Donald*, 921 So.2d at 202 (citing *Vermilion Hosp., Inc. v. Patout*, 906 So.2d 688 (La. App. 3 Cir. 2005)).

[37] La. R.S. § 51:1409(A).

[38] *Id.*

or act which gave rise" to the asserted LUTPA claim.[39] Louisiana courts have held that the statute is peremptive, rather than prescriptive,[40] such that the period cannot be renounced, interrupted, or suspended[41] and such that it is not subject to the doctrine of *contra non valentum*, which suspends the running of prescription when the cause of action is not known or reasonably knowable by the plaintiff.[42] However, Louisiana courts have recognized that a "continuing violation" of LUTPA can prevent the peremptive period from running.[43]

The continuing violation doctrine derives from tortious property damages cases, and it requires that the injury is continuous and that the injury results in continuous damages.[44] "A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act."[45] Mere failure to remedy a wrong does not constitute a continuous tort,[46] and a plaintiff who attempts to avail himself of the continuing tort theory bears the burden of establishing

---

[39] La. R.S. § 51:1409(E).

[40] *See, e.g., Tubos de Acero de Mexico v. Am. Int'l Inv. Corp., Inc.*, 292 F.3d 471, 481 n.4 (5th Cir. 2002) (citing *America's Favorite Chicken Co. v. Cajun Enters., Inc.*, 130 F.3d 180, 185 & n.6 (5th Cir. 1997) (citations omitted)).

[41] La. C.C. art. 3461.

[42] *Louisiana. v. McInnis Bros. Constr.*, 701 So.2d 937, 939-40 (La. 1997).

[43] *See, e.g., Benton, Benton, & Benton v. La. Pub. Facilities Auth.*, 672 So.2d 720, 723 (La. App. 1 Cir. 1996). Louisiana's Third Circuit Court of Appeals has expressly held that LUTPA's peremptive period is not subject to the continuing violation doctrine. *Glod v. Baker*, 899 So.2d 642, 648-49 (La. App. 3 Cir. 2005), *writ denied*, 920 So.2d 238 (La. 2006). However, this Court is bound by the Fifth Circuit's opinion in *Tubos de Aceros*, where the Fifth Circuit held that the continuing violation doctrine applies to the LUTPA peremptive period. 292 F.3d at 482 (noting the "tension" between the Louisiana appellate courts and agreeing with those appellate courts that have found the continuing violation doctrine to apply to LUTPA peremption).

[44] *Crump v. Sabine River Auth.*, 737 So.2d 720, 726 (La. 1999) (rehearing denied).

[45] *Id.* at 728.

[46] *Terrebonne Parish School Bd. v. Mobile Oil Corp.*, 310 F.3d 870, 885 (5th Cir. 2002); *Crump*, 737 So.2d at 729 ("[T]he breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription.").

its applicability.[47]

### 2. *Arguments and Analysis*

Here, Defendants assert that Atel's LUTPA claim is barred because Atel did not assert the claim until after the LUTPA one-year peremptive period had expired and that, accordingly, the claim must be dismissed.[48] It is undisputed that Atel did not assert its claim against Defendants for LUTPA violations until Atel sought leave to file its Third Amended Complaint on February 19, 2010.[49] Likewise, it is uncontested that Defendants' involvement with the Atel vessels ceased in August 2007.[50] Therefore, if the peremptive period began to run in August 2007, Atel's LUTPA claims are clearly and undisputedly perempted. However, in opposition to the motion for summary judgment, Atel asserts that Defendants engaged in a continuing violation after August 2007, such that the peremptive period began to run at a later date. Specifically, Atel argues that Defendants' violations were not limited to their direct involvement with the vessels but that, instead, Defendants "conspired to withhold material information" regarding the fee scheme previously utilized by Defendants, in which Defendants charged higher rates for the vessels than was paid to Atel.[51]

In support of its position that Defendants engaged in a continuing violation, Atel relies upon

---

[47] *Id.* at 877, 885-86; *In re Med. Review Panel for Maria Moses*, 788 So.2d 1173, 1177 (La. 2002).

[48] Rec. Doc. 518-1at p. 4.

[49] Rec. Doc. 237. The Third Amended Complaint was filed into the record on April 30, 2010. Rec. Doc. 259.

[50] *See, e.g.,* Rec. Doc. 516 ("ATEL further acknowledges that the Defendants' involvement with the ATEL vessels ceased in August 2007").

[51] Rec. Doc. 516 at p. 6.

two decisions from the Louisiana First Circuit Court of Appeal: *Fox v. Dupree*[52] and *Capitol House Preservation Company v. Perryman Consultants, Inc.*[53]  In *Fox*, the defendants filed a reconventional demand against the plaintiff for violations of the Louisiana Loan Brokers' statute, which expressly allowed an unfair trade practices action to be brought.[54]  The trial judge dismissed the unfair trade practices action for being brought out of time, despite the defendants' arguments that the plaintiff had engaged in a continuing violation by failing to comply with the bond filing and disclosure requirements set forth in the statute.[55]  On appeal, the Louisiana First Circuit determined that the trial judge had erred in dismissing the claims because there existed continuing violations by virtue of the Louisiana Loan Brokers' statute's disclosure requirements, such that the peremption period could not begin to run until the loan broker complied with the law.[56]

In *Capitol House*, the plaintiff was the successor in interest to a company that had been denied a riverboat-gaming license by the defendants.  The plaintiff alleged an unfair trade practices violation by the defendants and claimed that the defendants not only conspired and participated in a scheme to fraudulently obtain riverboat-gaming licenses but also that the defendants violated their own continuing statutory duty to disclose fraudulent and misleading information submitted to the Louisiana Gaming Enforcement Division.[57]  The trial court had found the plaintiff's claims to be perempted, which the plaintiff claimed was error because of the continuing violation in the

---

[52] 633 So.2d 612 (La. App. 1 Cir. 1993), *writ denied*, 635 So.2d 233 (La. 1994).

[53] 745 So.2d 1194 (La. App. 1 Cir. 1999), *writ denied*, 754 So.2d 937 (La. 2000).

[54] La. R.S. § 51:1910-1916.

[55] *Fox*, 633 So.2d at 613-14.

[56] *Id.* at 614.

[57] *Capitol House*, 745 So.2d at 1195.

defendants' failure to disclose fraudulent and misleading material information submitted to the Louisiana Gaming Enforcement Division.[58]  On appeal, the court found that, under Louisiana law, the defendants had a duty to disclose and that, therefore, their actions constituted a continuing violation such that the one year peremptive period began anew each day that the defendants violated their duty to disclose; accordingly, the court found that the suit was not perempted.[59]

Thus, in both of the cases cited by Atel, a Louisiana appellate court found a continuing violation such that the unfair trade practices claims were not perempted.  However, in both *Fox* and *Capitol House*, there existed an express, ongoing, statutory duty to disclose violations of Louisiana law.  Here, Atel has pointed to no such law that would have required Defendants to disclose their allegedly fraudulent conduct in previously subcontracting vessels to others for an amount higher than that disclosed to Atel.  Thus, Atel has not met its burden to establish the applicability of the continuing violation doctrine.  The mere failure of Defendants to disclose their allegedly fraudulent conduct or to remedy that conduct is not enough to constitute a continuing violation that would extend this period,  and the one-year peremption period expired in or around August 2008.[60]  Having found that Atel's LUTPA claims are perempted, this cause of action will not lie and treble damages will also be unavailable.

---

[58] *Id.* at 1195-96.

[59] *Id.* at 1196-97.

[60] Additionally, the Court notes that Atel has offered no evidence that there existed any continuous damage caused by Defendants' failure to disclose.  In arguing that Defendants engaged in a continuing violation, Atel ignores the fact that it has not provided any evidence from which this Court could conclude that there existed continuing damages caused by Defendants' acts or failures to act.

## C. *Racketeering Influenced and Corrupt Organizations Act*

Atel has alleged that Defendants violated RICO, which provides for civil liability for activities committed in violation of 18 U.S.C. § 1962.[61]  Specifically, Atel has alleged that Defendants violated Subsections (a), (b), (c), and (d) of Section 1962.  The Fifth Circuit has explained, that "boiled down to their essence in plain English," these subsections state:

> (a) a person who has received income from a pattern of racketeering cannot invest that income in an enterprise.

> (b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering activity.

> (c) a person who is employed by or associated with an enterprise cannot conduct the enterprise's affairs through a pattern of racketeering.

> (d) a person cannot conspire to violate subsection (a), (b), or (c).[62]

Accordingly, "RICO claims under all four subsections necessitate: 1) a *person* who engages in 2) *a pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*."[63]  Moreover, each subsection carries additional elements that must be demonstrated to establish a violation of that subsection.

Here, Defendants have not contested whether Atel has established the RICO person element; instead Defendants argue that Atel has not established a pattern of racketeering activity, has not established an enterprise, and has not established elements necessary to bring claims under each subsection of Section 1962.

---

[61] 18 U.S.C. § 1964.

[62] *In re Burzynski*, 989 F.2d 733, 741 (5th Cir. 1993).

[63] *Id.*

11

*1. Whether Atel has Established a Pattern of Racketeering Activity*

a. Parties' Arguments

Defendants argue that Atel's RICO claims fail, even assuming that predicate acts exist, because the alleged predicate acts do not meet the "continuity" requirement necessary to demonstrate a pattern of racketeering activity under Supreme Court precedent.[64]  For support, Defendants rely on  two Fifth Circuit cases: *Delta Truck & Tractor, Inc. v. J. I. Case Company*[65] and *In re Burzynski.*[66]

In *Delta Truck & Tractor*, the Fifth Circuit found that the plaintiff pled facts sufficient to demonstrate continuity so as to establish a pattern of racketeering activity, but the Court determined that the plaintiff failed to plead facts that established continuity as required to establish an enterprise. Although the court found the establishment of continuity lacking as to the enterprise element rather than the pattern of racketeering activity element, other Fifth Circuit cases have relied upon *Delta Truck & Tractor*'s discussion of continuity under the enterprise element when those cases have analyzed whether a plaintiff has established continuity regarding the pattern element.[67]

In *Delta Truck & Tractor*, the plaintiff, a company involved in the sale and repair of farm equipment, filed suit against three corporate defendants alleging that the defendants "consolidated [farm equipment] dealerships through numerous acts of wire and mail fraud to appropriate the

---

[64] Rec. Doc. 518-1 (citing *H.J. Inc. v. Northwestern Bell Tele., Co.*, 492 U.S. 229, 239 (1989); *Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 432 (5th Cir. 1990)).

[65] 855 F.2d at 241.

[66] 989 F.2d at 733.

[67] *See Burzynski*, 989 F.2d at 743; *Word of Faith*, 90 F.3d 118, 123 (5th Cir. 1996).; *Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007).

business assets of [the plaintiff] and over 400 other terminated [farm equipment] dealers."[68]  The court held that the association-in-fact enterprise was not continuous because the plaintiff "alleged as a pattern of racketeering activity nothing more than numerous predicate acts which were necessary segments of an otherwise singular commercial endeavor," namely the merger.[69]  The court therefore affirmed the dismissal of the RICO claims.[70]

In *Burzynski*, the Fifth Circuit held that the plaintiff failed to sufficiently plead "continuity" and, therefore, could not establish a pattern of racketeering activity.[71]  There, the plaintiff doctor alleged that the defendant insurance company committed predicate acts for the purpose of avoiding paying plaintiff's just insurance claims and putting the plaintiff out of business.[72]  The prior acts, which all occurred during a previous lawsuit between the two parties, consisted of the defendant sending thirty-five letters to other insurance companies to dissuade them from paying plaintiff's claims during the prior litigation, filing fraudulent pleadings in the prior litigation, submitting false grant applications, providing false information about plaintiff to federal investigators, and denying coverage of plaintiff's claims for patients insured by defendant.[73]  The court held that the plaintiff failed to allege continuity because all of the predicate acts were "part and parcel of a single, discrete and otherwise lawful commercial transaction," namely defending a lawsuit.[74]  Thus the court, citing

---

[68] *Delta Truck & Tractor*, 855 F.2d at 242.

[69] *Id.* at 244.

[70] *Id.*

[71] 989 F.2d at 742.

[72] *Id.*

[73] *Id.*

[74] *Id.* at 743.

*Delta Truck & Tractor*, specifically held that the plaintiff had failed to allege a "pattern of racketeering activity" because the plaintiff had failed to establish continuity.[75]

Here, Defendants argue that all of the alleged predicate acts – namely, the allegations of mail and wire fraud in connection with Defendants' retaining the difference in charter rates – stem from one discrete transaction, the MBCA between Sea Mar and Atel. Defendants argue that this situation is analogous to that in *Burzynski*, where the Fifth Circuit found no continuity, and thus no pattern of racketeering, because all of the alleged predicate acts there concerned one transaction – the defense of one lawsuit. Therefore, Defendants argue that Atel's RICO claims must be dismissed because Atel cannot establish continuity and, therefore, has failed to establish a pattern of racketeering activity.

In opposition, Atel argues that the predicate acts of mail and/or wire fraud committed by Defendants[76] satisfy the requirements of close-ended continuity – one method by which a pattern of racketeering activity may be established.[77] Atel states that the predicate acts were committed over a three year period and thus were committed over a "substantial period of time" and that it is clear that the predicate acts were a regular way of conducting business and thus constitute close-ended continuity.[78] Atel identifies the predicate acts of mail and/or wire fraud specifically as "the invoicing and collection of payment at higher rates then [sic] retained by NWS."[79] Atel also

---

[75] *Id.* The Court addresses the requirements for establishing continuity in Section B, *infra.*

[76] Atel notes that for the purposes of this motion, Defendants assume, without admitting, that the predicate acts occurred.

[77] Rec. Doc. 516 at p. 15.

[78] *Id.*

[79] *Id.* at p. 14.

contends that Defendants' argument – that there is no continuity because the pattern stemmed from the MBCA between Sea Mar and Atel – is without merit. Atel argues that Sea Mar and NWS repeatedly entered into charters with each other and that NWS repeatedly entered into third-party charters with other entities and that these acts did not result from the MBCA because Atel was not a party to these charters and subcharters and so, Atel argues, Defendants are not entitled to summary judgment on the issue of continuity.

### b. Applicable Law

A pattern of racketeering activity "requires at least two acts of racketeering,"[80] although the Supreme Court has noted that "while two acts [of racketeering] are necessary, they may not be sufficient [to establish a pattern of racketeering activity]."[81] In *World of Faith Outreach Center Church, Inc. v. Sawyer*,[82] the Fifth Circuit explained that "[t]o establish a pattern of racketeering activity . . . a plaintiff 'must show that the racketeering predicates are *related*, and that they amount to or pose a threat of *continued criminal activity*.'"[83]

To establish that the predicate acts are related, a plaintiff must show that "the acts have the 'same or similar purposes, results, participants, victims, or methods of commission.'"[84] To establish continuity, a plaintiff must show "either [] a closed period of repeated conduct or [] past conduct that

---

[80] *Delta Truck & Tractor*, 855 F.2d at 243 (quoting 18 U.S.C. § 1961(5)).

[81] *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14.

[82] 90 F.3d 118 (5th Cir. 1996).

[83] *Id.* at 122 (quoting *H.J. Inc.*, 492 U.S. at 239 (1989)).

[84] *Id.* (quoting *H.J. Inc.*, 492 U.S. at 440)).

by its nature projects into the future with a threat of repetition."[85]  Here, Defendants have not challenged that the alleged predicate acts are related; instead, Defendants assert that Atel has failed to establish continuity.

A plaintiff may demonstrate continuity by either showing a closed-ended or open-ended pattern of racketeering activity.[86]  However, the Fifth Circuit has held that it is not necessary "to delve into the arcane concepts of close-end[ed] or open-ended continuity under RICO" when the alleged RICO predicate acts are "part and parcel of a single, otherwise lawful transaction."[87]  In such a situation, according to the Fifth Circuit, "a 'pattern of racketeering activity' has not been shown."[88]


c.  Analysis

In this case, Atel has not shown continuity because all of the alleged predicate acts are "part and parcel of a single, otherwise lawful transaction,"[89] namely the chartering of the Atel vessels. Atel has not provided evidence that Defendants defrauded any other parties through similar activities, and the chartering of the Atel vessels was done by virtue of the MBCA entered into between Atel and Sea Mar.[90]  Therefore, without the MBCA between Atel and Sea Mar, none of the

---

[85] *Burzynski*, 989 F.2d at 742.

[86] *Word of Faith*, 90 F.3d at 122.

[87] *Id.* at 123.

[88] *Id.*

[89] *Id.*

[90] Again, the Court notes that although Atel and Sea Mar entered into two charter agreements covering four vessels, the charter agreements are identical with the exception of the vessel names and the Atel entity involved. *See* Rec. Doc. 161-4.  Further, the charter agreements were entered into at the same time.  *See id.* Atel has not argued that the existence of two charter agreements between Atel and Sea Mar demonstrates that the alleged predicate acts were not part and parcel of a single lawful activity; instead, as noted above, Atel specifically argues that the predicate acts did not arise from the MBCA and instead involved the subcharters entered into by NWS.  Therefore,

alleged predicate acts would have occurred; thus the alleged predicate acts were part and parcel of participating in the MBCA.

A review of Fifth Circuit precedent demonstrates that Atel's contention that the predicate acts were not part of one discrete transaction because NWS entered into many third-party subcharters and because Atel was not a party to the contracts authorizing these third-party subcharters is misguided. For instance, as stated above, in *Burzynski*, the Fifth Circuit held that the alleged predicate acts of mail and wire fraud – which included the defendant sending thirty-five letters to other insurance companies to dissuade them from paying plaintiff's claims during the prior litigation, filing fraudulent pleadings in the prior litigation, submitting false grant applications, providing false information about plaintiff to federal investigators, and denying coverage of plaintiff's claims for patients insured by defendant – failed to demonstrate the necessary continuity to establish a pattern of racketeering activity because all of the acts occurred as part of the single, otherwise lawful transaction of defending a lawsuit.[91]

Likewise, in *Word of Faith World*,[92] the plaintiff, a church, alleged that defendants violated RICO by producing a news program about the plaintiff that the plaintiff contends was false and was intended to drive the plaintiff out of business. The plaintiff alleged predicate acts which consisted of the transportation of stolen computer disks; the theft of donations, church mail, and other church property by defendants; wire fraud in the form of false statements; a scheme to deprive the plaintiff

the existence of two charter agreements between Atel and Sea Mar does not affect this Court's reasoning.

[91] *Burzynski*, 989 F.2d at 742-743.

[92] 90 F.3d at 118.

church of the honest services of its employees; and obstruction of justice.[93]  All of these acts were allegedly done in the preparation and airing of the news report about the plaintiff church.[94]  The plaintiff argued that it had demonstrated both open-ended and closed-ended continuity[95]; however, the Fifth Circuit held that the alleged predicate acts failed to establish any form of continuity.  The court stated:

> It is unnecessary to delve into the arcane concepts of closed-end[ed] or open-ended continuity under RICO . . . . [W]here alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown.  In this case, the alleged predicate acts occurred during the production and airing of *PrimeTime* broadcasts concerning [plaintiff].  The alleged acts were all part of a single lawful endeavor–namely the production of television news reports concerning a particular subject . . . . [Plaintiff] has failed to plead a 'continuity of racketeering activity or its threat.'[96]

Conversely, in *Abraham v. Singh*,[97] the Fifth Circuit determined that the plaintiffs did, in fact, allege continuity in that the alleged predicate acts were not "part and parcel" of a single transaction. That case, however, is distinguishable from this case.  In *Abraham*, a number of plaintiffs brought suit alleging that they were recruited to travel from India to the United States by defendant Chad Chandler to work for Chandler's company, defendant Falcon Steel.[98]  The plaintiffs alleged that when they arrived in the United States, there were no jobs, defendants confiscated their passports, they were housed in poor conditions, and defendants demanded monetary payments from the

---

[93] *Id.* at 121.

[94] *Id.*

[95] *Id.* at 122.

[96] *Id.* at 123 (internal citations omitted).

[97] 480 F.3d 351 (5th Cir. 2007).

[98] *Id.* at 353.

plaintiffs.[99] The alleged predicate acts included money laundering, peonage, visa fraud, immigration violations, Travel Act violations, and Hobbs Act extortion.[100] The district court dismissed the plaintiffs' RICO claims finding that the alleged predicate acts did not pose a threat of continuing racketeering activity.[101] On appeal, the Fifth Circuit reversed, finding that the plaintiffs sufficiently pled a pattern of racketeering activity.[102] Specifically, the Fifth Circuit explained, "[u]nlike our precedents identifying a single illegal transaction, there are multiple victims, and there is no reason to suppose that this systematic victimization allegedly begun in November 2000 would not have continued indefinitely had the plaintiffs not filed this lawsuit."[103] In the case now pending before this Court, there are no other alleged victims nor are there MBCAs with other parties to sustain Atel's claim and establish continuity; therefore, Atel cannot establish a pattern of racketeering activity.

Furthermore, other district courts within the Fifth Circuit have found a lack of continuity in cases with similar fact patterns to that before this Court. For instance, in *Conry v. Daugherty*,[104] the court found that the plaintiff had failed to allege continuity and thus could not establish a pattern of racketeering activity.[105] In that case, the plaintiff had purchased from defendant a property, and pursuant to a purchase agreement, the defendant allegedly promised to spend $60,000 renovating the property and promised that he would not use substandard materials in completing the

---

[99] *Id.* at 354.

[100] *Id.*

[101] *Id.*

[102] *Id.* at 356.

[103] *Id.* (citing *Word of Faith*, 90 F.3d at 123).

[104] No. 10-4599, 2011 WL 2473959, *4-*6 (E.D. La. June 22, 2011) (Vance, C.J.).

[105] *Id.* at *6.

renovations.[106]  The plaintiff subsequently purchased the property with the defendant financing $180,000 of the purchase price.[107] The plaintiff alleged that he later learned that the defendant used Chinese drywall throughout the house and that this created health risks.  Further, the plaintiff stated that he fell behind on his loan payments to the defendant and that the defendant made various threats towards the plaintiff regarding the debt.[108]  The plaintiff alleged that the defendant engaged in multiple acts of mail fraud, wire fraud, and extortion in relation to the sale of the property and the subsequent debt collection as a result of these events.[109]  The court held, however, that these alleged predicate acts were all part of a single transaction and, therefore, could not constitute a pattern of racketeering activity.[110]

Likewise, in *Young v. Scruggs*,[111] the plaintiffs alleged that the defendants withheld funds that were owed to the plaintiffs by virtue of written agreements that the plaintiffs entered into with the defendants to assist with legal services in tobacco litigation cases.[112]  The plaintiffs alleged that the defendants withheld funds owed to the plaintiffs on multiple occasions in order to bribe public officials during the course of a separate lawsuit.[113]  The court found that the alleged predicate acts arose from a single contract and occurred during the course of an otherwise lawful transaction,

---

[106] *Id.* at *1.

[107] *Id.*

[108] *Id.* at *1-*2.

[109] *Id.* at *4.

[110] *Id.* at *6 (citing *Word of Faith*, 90 F.3d at 123; *Stewart v. GMAC Mortg. LLC,* No. 10-149, 2011 WL 1296887, at *4 (S.D. Miss. Mar. 31, 2011); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F.Supp.2d 516, 531 (E.D. La.  2009) (Vance, C.J.)).

[111] No. 09-669, 2010 WL 2301641, *6 (S.D. Miss. 2010).

[112] *Id.* at *1, *6.

[113] *Id.* at *5-*6.

namely the separate lawsuit. Thus, the court held that the plaintiffs had failed to allege continuity.[114]

In this case, Atel alleges that Defendants engaged in a pattern of racketeering by committing various acts of mail and wire fraud to enable Defendants to retain the difference in charter hire rates; however, these alleged acts of fraud were "part and parcel" of an otherwise lawful transaction – namely, the chartering of the Atel vessels, which occurred by virtue of the MBCA – a single transaction.[115] Specifically, it is undisputed that it was lawful for Sea Mar to charter the Atel vessels pursuant to the MBCA – in fact, this was the entire purpose of the MBCA. All of the alleged wrongful acts involved the rates solicited from the entities that eventually chartered the Atel vessels; thus, all of these acts occurred by virtue of the one transaction – the MBCA. Moreover, unlike *Abraham*, there is no reason to believe that these violations would have continued indefinitely had Atel not filed suit[116] because the MBCA that allowed Sea Mar to charter the Atel vessels was no longer in effect between Atel and Sea Mar at the time this suit was filed and therefore, the activity had ceased. Therefore, Atel has failed to demonstrate continuity and, in turn, has failed to establish a pattern of racketeering activity. Thus, all of Atel's RICO claims must be dismissed.

Having found that Atel's RICO claims must be dismissed because Atel has failed to establish the necessary element of a pattern of racketeering activity, the Court will not address the parties' arguments concerning whether Atel has established an enterprise and whether Atel has established the necessary elements for a claim under each RICO subsection.

---

[114] *Id*. at *6.

[115] Again, the Court will treat the agreements as one agreement for the purposes of deciding this motion. *See supra* n. 4, n. 90.

[116] *Abraham*, 480 F.3d at 356.

### III. Conclusion

Defendants have established that Atel's LUPTA claim must fail as a matter of law because it is undisputed that Atel did not assert this claim until after the one-year peremptive period had expired and because Atel has not demonstrated that Defendants' conduct amounts to a continuing violation, which could have prevented the peremptive period from running. Further, Defendants have established that Atel's RICO claims fail as a matter of law because Atel cannot establish a pattern of racketeering activity, a necessary element for claims brought under any RICO subsection. Accordingly;

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment[117] is **GRANTED** and that Atel's claims brought under the Louisiana Unfair Trade Practices and Consumer Protection Act and under the Racketeering Influenced and Corrupt Organizations Act are **DISMISSED**.

**NEW ORLEANS, LOUISIANA**, this 20th day of July, 2012.

                                                   **NANNETTE JOLIVETTE BROWN**
                                                   **UNITED STATES DISTRICT JUDGE**

---

[117] Rec. Doc. 518.